Michael Kujawa on behalf of defendants appellants Lauri Tobias and Margaret Segerstin. The district court abused its discretion in this case when it granted plaintiffs' motions for fees and costs and imposed sanctions against the defendants under Rule 16F of the... How much money are we talking about? We are talking about, right, I think it's $4,256 was the actual amount in the order. I want to know how excited I should get about that. Well, I don't know that it's the money that makes it exciting, Judge. I think the thing that makes it exciting is the... No, I didn't think it was. What's that? I didn't think it was. Yes, it's the fact that the court, I think, the district court, applied an incorrect legal standard when it used 16F to sanction us for our conduct in this settlement conference. And the language in particular that was used was this idea that we did not engage in, or it said timely, fulsome, and candid communication from the defendants was lacking in the week between the telephone conference and the actual settlement conference. And the part that I struggle with is I think the reason we're being sanctioned is because I was perhaps too timely, candid, and fulsome during the telephone conference when I offered, to the best of my knowledge, what the settlement talks had been in the past when the court asked. So what happened here was we had a telephone conference set about two, three weeks prior to the beginning of a trial. There had been a couple of formal settlement conferences with the magistrate, which had been unsuccessful. In the year since the last settlement conference, to the best of our knowledge, the plaintiff's demand remained over a million dollars. Settlement wasn't even in our minds to even think about. We got a notice that we were to participate in a telephone conference without any indication as to what the topic of the telephone conference was going to be. And were you surprised that the topic of settlement came up? Well, not necessarily. It's a topic in virtually, it's always on the agenda, right? In a civil case? It is, but the way that the previous, my understanding of the previous settlement conferences, the way they had broken down, and the fact that the plaintiff was at- You're not trying to tell us you were surprised that it came up, are you? I didn't think we were going to be talking about settlement. I thought we were going to be- You were surprised. Yes. I thought we were going to be talking about scheduling and about whether we were ready to go forward, whether we had any issues. So I had not spoken to my client about either the insurance company or the defendants about how they felt about any sort of settlement. When Judge Reinhart asked about what had happened in the past regarding settlement, counsel for the plaintiff said they weren't able to speak to it with any clarity at that particular point in time. I had not been involved in either of the two prior settlement conferences, but I tried to give Judge Reinhart what I thought was the accurate facts regarding what had transpired. Counsel, let me just ask you procedurally what we're doing here, because we have a situation in which the district judge made his decision about facts that occurred in front of him. Yes. With the telephone conference and then with the settlement conference. I haven't seen an argument that factual findings were erroneous or that any conflicting evidence was offered. Well, no. What I think is, I believe the factual findings were erroneous when you try to apply them to Rule 16-F, because I don't see how any of- Is it a factual argument or a legal argument? It is a legal argument. Okay. The facts are the facts. What we said, we did say. I'm not denying that any of these conversations took place. What I am saying is that when you apply the facts to Rule 16-F, we did not violate any of the provisions of 16-F. Under the district court's view, you signaled in the first telephone conference that pretty clearly that you all were willing to consider an offer in the $150,000 range. Do you agree with that? I disagree with that. That's what the district judge found, isn't it? I believe that is what the district judge wrote in the order. The only thing I said during the telephone conference was that some point in time in the past year, I was of the understanding that a conversation between the plaintiff, who was pro se at the time, and a representative of the insurance company had taken place in which there was a discussion in the neighborhood of $150,000, which was rejected. Okay. So you signaled that there had been an offer in that range. Plaintiff's counsel said, we never heard that number before. That's a promising basis for discussion. I'm paraphrasing here. Perfectly understandable how everybody would react to it that way. So the judge says, let's have a settlement conference. You're perfectly entitled to change your mind about things, right? And the judge made that clear. But he was upset because you needed to let him know and let the plaintiff know, no, you weren't ready to go forward on that basis. That kind of backing up is permissible, but the timing of it wasted everybody's time and the plaintiff's money. It's hard for me to see an abuse of discretion here. I guess I failed to see how it wasted the plaintiff's time. We didn't come to the settlement conference without the proper people with authority to settle the case. Because you had signaled a willingness to offer in the range of $150,000. Now, you don't have to do that. You don't have to follow through on that. But, you know, look, you do wind up wasting people's time if you're just going to repeat the offer that had been rejected a year, year and a half earlier, right, of $60,000. And, again, in the telephone conference I had with Judge Reinhart, I did not suggest a possibility of settlement at $150,000. You're an experienced litigator. How else would you interpret the mention of that number from prior discussions, saying that it had been rejected? That's a clear signal that something on that order had been offered before, correct? I believe it had been offered before. Maybe you were mistaken, okay? We don't know. But that's a clear signal. Judge Reinhart is an experienced judge and manager of settlement negotiations. He understood that. Plaintiff's counsel understood it. That's a basis for going forward. And, Judge, the last thing I want to do a week before trial starts is get on the wrong side of Judge Reinhart at a settlement conference. So Judge Reinhart had granted summary judgment in this case long ago, and it had been reversed. I assumed that Judge Reinhart would be happy that we came with any money that he might be thinking, this is new counsel, new plaintiff's counsel's opportunity to get out of a case which doesn't look good for them early on, without them having expended much in the way of fees or time, and might put some money into Mr. Cain's pocket. And quite honestly, we offered $60,000 at the settlement conference, and that was $60,000 more than the jury felt the case was worth, because they came back with a not guilty verdict at the end of the trial. So I guess I just, I never, Judge Reinhart asked me a specific question. What is the history regarding settlement negotiations in this case? Plaintiff's counsel said they didn't know. I wasn't 100% positive, but I tried to give him the best timeline and recitation of what had taken place up to that point. Never once did I indicate that we were still willing to do that. I had no idea what we were willing to do. Again, we've kind of got this question about are you testifying or are you arguing, but do you want us to remand for an evidentiary hearing and more explicit findings? No, I think the order should be reversed because it was an incorrect legal standard when we look at the- If a judge applies an incorrect legal standard, I don't think that he did, but if he does, then we would need to give him an opportunity to apply the correct legal standard to the facts, right? If that is the case- And you seem to want to be disputing some of the facts in your appellate papers without actually testifying. Do you want a hearing? Yes. We do. Thank you, Your Honors. Okay. Thank you, Mr. Kujawa. Mr. Cotuguala? Good morning, and may it please the Court. My name is John Cotuguala, and I represent the plaintiff appellee, Dr. King. Appellants challenged a $4,000 sanction award from an unnecessary settlement conference that was induced by their representations. Defendants have not and cannot demonstrate that district court made clearly erroneous factual findings or abused its discretion in awarding sanctions under Rule 16F. Three weeks before the trial, the district court held a status conference. On that conference, the district court asked about prospects of settlement, and as we just heard, the defendant made representations about prospects of settlement. They were numbers that plaintiff had not heard to date. In fact, it was significantly higher than what plaintiff had heard in the last failed settlement conference about a year prior to that date. And based on those representations, both the court and the parties thought it would be fruitful to have a settlement conference, which the court scheduled for the following week in Rockford, Illinois. Plaintiffs took time out of their trial preparation schedule to prepare for the settlement conference. Plaintiff's counsel drove from Chicago to Rockford, and plaintiff himself had to drive from Michigan to Rockford the night before and stay in a hotel in order to be at the settlement conference the next morning. Yet when we got to the settlement conference, defendants offered nothing more than what they'd offered in the original settlement conference that was failed about a year prior. Notably... And was that $150,000? No, Your Honor, it was something around $60,000. $60,000. Yeah. And notably, the district court judge, within a few hours of the failed settlement conference, issued a minute order, sua sponte, inviting plaintiffs to submit a motion for fees in association with this unnecessary settlement conference. Counsel, one of the phrases the district judge used was, let's see, timely, fulsome, and candid, right? Correct. You don't think the party has to be so candid with the district judge that they reveal their reservation price, do they? No, Your Honor. Or authority limits? No, Your Honor, and Judge Reinhart was clear about this in his opinion, as you noted earlier. The issue wasn't that they changed their position in settlement or didn't come with a certain number. The issue was that they presented a certain settlement range, which induced the parties, just weeks before trial, to suspend their trial preparation and come to Rockford in order to have a settlement conference. And as Judge Reinhart said, they didn't have to offer that number. They didn't have to offer anything at all. But what they did have to do was inform the parties prior to the actual day of the settlement conference that their number was way off and that maybe it was better off not having a settlement conference at all. And indeed, Judge Reinhart invited defendants to submit evidence of why they participate in good faith or actually just provide any explanation at all as to why they weren't able to inform the court and the parties before the day of the settlement conference. Where did he make that invitation? That was after, so weeks after the failed settlement conference, after trial had ended, the plaintiff submitted a motion for fees in association with the unnecessary settlement conference. The district court then entered a docket order inviting defendants to submit a response. And notably, the court gave three weeks for the defendants to respond. And they had more than ample opportunity to submit affidavits or declarations from their attorneys, from the other individual defendants, from their insurance adjuster, or anyone else who would have given an explanation as to why they weren't able to notify the parties in the court prior to the day of the settlement conference that their range was grossly different than what they represented at the status conference. There was no explicit finding of a lack of good faith, was there? That's right, Your Honor. Is that a problem? No, Your Honor. Under 16F, the court can find that the defendants were substantially unprepared or did not participate in good faith in the settlement conference. And as a result, the court allowed defendants to present evidence of their good faith participation, and defendants failed to present adequate information. They had every opportunity to present information. Well, what do you think the defendants should have done? Well, probably should have, you know, the defendant today is requesting they be remanded for an evidentiary hearing. The defendant probably should have taken the time to submit affidavits and declarations in support. No, I'm talking about the second settlement conference. What in your view should they have done? They decided $150,000 was too much. They didn't want to pay more than $60,000. What should they have done? Your Honor, they should have informed the court and the parties that what they represented on the teleconference was nowhere near where they were at. And if they would have submitted evidence that they didn't come to that conclusion until... Don't forget evidence. So it would have been enough for them to have said, we're only going to offer $60,000. And therefore, you may not want to have another settlement conference. Is that enough? Yeah, I believe so. In that case, if they were to say that, you know, our range was grossly misstated, it's not as if they were within a few thousand dollars or close. It was something like half. So, yeah, it would have been enough if they would have just informed that it was half. And then the plaintiffs could have... So the complaint is just the bother of the meeting. I'm sorry? The complaint is the bother of the meeting, of the having to go to the meeting, having to go to Rockford and so on. Correct, that it was unnecessary. And if they would have informed... Fruitless is your time. Yeah, and so, you know, if they would have just informed of their change of position, everyone could have thought better and said, you know, maybe this won't be fruitful. A lot of settlement conferences turn out to be unfruitful, but some of them are more pointless than others. Yes, Your Honor, and I think that's demonstrated here by the district courts entering sua sponte within hours of the conclusion that this was unnecessary and fees were warranted. And it should be noted that the district court judge was a part of all these proceedings and had firsthand knowledge of the tone and demeanor on both the status conference and also what occurred in the settlement conference. And also, I guess, if defendant wanted to augment the record because there are no transcripts of the proceedings, they could have used Federal Rule of Appellate Procedure 10C to recreate a transcript based on the recollections, which would have had to been approved by the trial court judge to be on the record today, and they also failed to do that. So defendants had every opportunity to put evidence into the record to support that sanctions were not warranted and they failed to do so. And they have not and they cannot meet their burden that the judge was clearly erroneous in his factual findings or that he abused his discretion in finding sanctions were warranted under 16F. And we ask this court to affirm. So how much were the sanctions? About $4,000, I think $4,200 and change. And how did he arrive at that figure, the judge? He arrived at that figure based on he used attorney time and then also travel costs. Those are figures supplied to the judge by you, I take it. Correct. We did submit an affidavit in support of our fee award and it detailed all of our expenses. And notably, we didn't even include all the attorney time. We were trying to be very judicious in what we had submitted to the court. So it was actually grossly lower than the actual attorney time spent on the matter. And ultimately, this was an effective use of Rule 16F for the district court to manage its docket. We ask to affirm. Okay. Thank you. So Mr. Kujawa, do you have anything further? Thank you, Your Honors. So I keep hearing that the numbers were way off or grossly different. And I just have to disagree what we did. When we were setting up in the first telephone conference, it was the Plaintiff's Counsel who expressed interest in having an actual settlement conference. Then it was Judge Reinhardt who expressed interest in having a settlement conference. I had no idea yet at that moment whether we had the availability of the people from the insurance company or my clients from the school district. We managed to get them all together and get to the settlement conference. And the fact that we did not come in at the same number that I had talked about. Well, shouldn't you have notified them in advance of this Rockford meeting that you weren't going over $60,000 and maybe we should cancel the meeting? Well, I didn't know exactly how much authority we were going to have at the settlement conference until the day of the settlement conference, number one. Number two. But you thought until then it might be $150,000? I wasn't sure. I had not gotten word back from the insurance companies of what they wanted to do. What we had in this case was a pending punitive damages count against the two individual defendants, the superintendent of the school district and the principal. And so there was a lot of communication between the defendants themselves and the insurance company regarding what they were going to do vis-a-vis settlement. Now, is it correct the sanctions were only $4,200? It is in the $4,200 to $4,300 range. Why would you want to litigate something like that? Because that's what my clients wanted to do, Your Honor. And because I look at what took place. Why did they want it at $4,200? They have to pay you a fee? Why would they? Because when the order came out, first of all, when Judge Reinhart sent out the sua sponte docket saying that they could file a motion for fees and costs after the trial, I was very surprised by that. I thought Judge Reinhart understood what was happening. I thought when we were still heading out to Rockford, even when I found out I was only going to have $60,000, I still thought Judge Reinhart would be on our side, considering he had found that there was no question of material fact and granted summary judgment for us long ago and then had been reversed on appeal. That's why we were going to trial. I thought he would be happy to try to work the case. If I wanted to negotiate directly with the plaintiff, we could have just called and said, hey, guess what, we'll offer you $60,000 to settle the case. That hadn't worked in the past. Judge Reinhart had not been involved in any of the prior settlement conferences. It had been the magistrate. And I thought Judge Reinhart might come in and see if he couldn't get plaintiff to take whatever it was we were offering, which was more than the zero that Judge Reinhart had given when he granted summary judgment in the case. So the reason why I am here litigating this case is because I don't think I did anything wrong. And I think there's a chilling effect when I am being sanctioned for not using a timely, fulsome, and candid communication, which is exactly what I tried to do with Judge Reinhart. No, I understand why you don't want to have the sanctions on your record. That's perfectly understandable. Thank you, Your Honor. Okay, well, thank you to both counsel. And we're going to take a 10-minute break.